Gaston Cap., LLC v. Kellar, 2026 NCBC 71.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV006056-350

GASTON CAPITAL, LLC; GASTON
CAPITAL FUND V, LLC; GASTON
CAPITAL INCOME FUND II, LLC
f/k/a GASTON CAPITAL FUND VI,
LLC; GASTON CAPITAL
HEALTHCARE FUND, LLC;
GASTON CAPITAL PARTNERS
LLLP; MKM & CO.; THE
WILLIAM GASTON FUND, LLC;
THE WILLIAM GASTON INCOME
FUND, LLC; DONALD DOCTOR;
DANIEL SASSANO; LARRY
WIDNER; SASSANO LE, LLC;
and SASSANO ENDEAVORS, LLC,

Plaintiffs,

v.

FRANZ W. KELLAR;
ORTHOMEDFLEX, LLC;
BIOMEDFLEX, LLC; PRONUVIS,
LLC; PRONUVIS (NC), LLC;
KINEMAX ENGINEERING, PLLC;
AURUM MATRIX LLC; LITTLE
ENGINE, LLC; HAROLD
CROWDER; and RENOVO LIFE,
LLC,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' PARTIAL MOTION TO
DISMISS AND PLAINTIFFS' MOTION
FOR LEAVE TO AMEND**

**THIS MATTER** is before the Court on Defendants' Partial Motion to Dismiss

("Motion to Dismiss," ECF No. 10) and Plaintiffs' Motion for Leave to File First

Amended Complaint ("Motion to Amend," ECF No. 26) (collectively, the "Motions").

The Court concludes that the Motions should be **GRANTED** in part and **DENIED** in

part.

*Troutman Pepper Locke LLP by William J. Farley, III and Jenna M.
White for Plaintiffs Gaston Capital, LLC, Gaston Capital Fund V, LLC,
Gaston Capital Income Fund II, LLC f/k/a Gaston Capital Fund VI,*

*LLC, Gaston Capital Healthcare Fund, LLC, Gaston Capital Partners, LLLP, MKM & Co., The William Gaston Fund, LLC, The William Gaston Income Fund, LLC, Donald Doctor, Daniel Sassano, Larry Widner, Sassano LE, LLC, and Sassano Endeavors, LLC.*

*Alexander Ricks, PLLC by Miller F. Capps and Michael L. Wilson for Defendants Franz W. Kellar, Orthomedflex, LLC, Biomedflex, LLC, Pronuvis, LLC, Pronuvis (NC), LLC, Kinemax Engineering, PLLC, Aurum Matrix, LLC, Little Engine, LLC, Harold Crowder, and Renovo Life, LLC.*

Davis, Judge.

## INTRODUCTION

1.    This case involves a dispute arising from a series of loans made between 2013 and 2025 by a group of private equity companies to fund biomedical research.

## FACTUAL AND PROCEDURAL BACKGROUND

2.    The Court does not make findings of fact in connection with a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint (and in documents attached to, referred to, or incorporated by reference in the complaint) that are relevant to the Court's determination of the motion.  *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).[1]

3.    Defendant Franz Kellar is a North Carolina-based engineer who develops and markets medical device products through his companies OrthoMedFlex, LLC ("OrthoMedFlex"), BioMedFlex, LLC ("BioMedFlex"), ProNuVis, LLC

---

[1] As discussed below, the Court has elected to address in this Opinion both Defendants' motion to dismiss Plaintiffs' original Complaint and Plaintiffs' motion seeking leave to file their proposed amended complaint.  The factual allegations cited herein are to Plaintiffs' proposed amended complaint.

("ProNuVis"), ProNuVis (NC), LLC ("ProNuVis (NC)"), Aurum Matrix, LLC ("Aurum"), Kinemax Engineering, PLLC ("Kinemax"), Dynamic Balancer Systems, LLC ("DB Systems"), Spectral–Flush Anchor Systems, LLC ("Spectral"), and Renovo Life, LLC ("Renovo") (collectively, the "Kellar Entities"). (Am. Compl., ECF No. 26.1, ¶¶ 4–6, 8–10, 35, 52–53.)[2]

4. Plaintiffs Gaston Capital, LLC ("Gaston Capital"), Gaston Capital Fund V, LLC ("Capital Fund V"), Gaston Capital Income Fund II, LLC f/k/a Gaston Capital Fund VI, LLC ("Capital Fund VI"), Gaston Capital Healthcare Fund, LLC ("Healthcare Fund"), Gaston Capital Partners, LLLP ("Capital Partners"), MKM & Company ("MKM"), The William Gaston Fund, LLC ("WG Fund"), The William Gaston Income Fund, LLC ("WG Income Fund"), Sassano LE, LLC ("Sassano LLC"), and Sassano Endeavors, LLC ("Sassano Endeavors") are private equity companies doing business in North Carolina. (Am. Compl. ¶¶ 22–29.)

5. Plaintiffs Donald Doctor, Daniel Sassano, and Larry Widner are all North Carolina residents. (Am. Compl. ¶¶ 30–32.)

6. Defendant Harold Crowder is a North Carolina resident and was the sole managing member of Defendant Little Engine, LLC ("Little Engine"), a North Carolina limited liability company that was administratively dissolved on 24 July 2025. (Am. Compl. ¶¶ 44–45.)

---

[2] OrthoMed, BioMedFlex, ProNuVis (NC), Kinemax, Aurum, and Renovo are all North Carolina limited liability companies. DB Systems, Spectral, and ProNuVis are Delaware limited liability companies. All of the entities do business in North Carolina. (Am. Compl. ¶¶ 36–44).

7.    At all relevant times, Kellar relied on third-party investors (such as Plaintiffs) to provide capital in the form of investments or loans[3] to fund his development and marketing of medical devices.  (Am. Compl. ¶¶ 54–55.)

8.    Plaintiffs allege that they have collectively paid out over $10 million to the Kellar Entities for this purpose as reflected in a series of contracts evidencing the transactions.  (Am. Compl. ¶¶ 88–89.)[4]

9.    Most recently, Kellar's focus has been on developing devices for ligament repair procedures—specifically the Dynamic Balancer and the Flush Anchor (collectively, the "Devices.") (Am. Compl. ¶¶ 8–10.)

10.    Plaintiffs allege "Kellar represented that Plaintiffs' capital contributions could be repaid, at least in part, through future capitalization of the [D]evices, thereby suggesting that the Kellar Entities would own the intellectual rights to the [D]evices."  (Am. Compl. ¶ 80.)

11.    Plaintiffs assert that Kellar nevertheless proceeded to transfer or assign the intellectual property rights in the Devices to Little Engine, and then "orchestrated the further transfer and/or assignment of those rights to DB Systems and Spectral."  (Am. Compl. ¶ 83.)

---

[3] The Court notes that throughout the Amended Complaint, Plaintiffs use the term "investments" to reference both loan transactions and purchases of equity stakes in the Kellar Entities.

[4] Although none of these contracts are attached to any of the pleadings that have been filed by the parties, Plaintiffs' original and Amended Complaint—as discussed in more detail below—identify all of the contracts that are relevant to this case and—for virtually all of them—list the lender, the debtor, the amount of the loan, the date the promissory note was executed, and the applicable maturity date. (Am. Compl. ¶ 89.)

12. According to Plaintiffs, Kellar did so for the purpose of keeping the Devices (and the money they generated) separate from the financial obligations owed by the Kellar Entities to Plaintiffs. (Am. Compl. ¶¶ 147–51.)

13. On 26 June 2025, a Notice of Default was sent on behalf of Plaintiffs Gaston Capital, Capital Fund V, Capital Fund VI, Healthcare Fund, Capital Partners, MKM, WG Fund, and WG Income Fund to Defendants. (Am. Compl. ¶ 71.) This notice of default demanded payment of $10,340,873.31. (Am. Compl. ¶ 72.)

14. On 27 August 2025, a Notice of Default and Demand for Payment was sent to Kellar and OrthoMedFlex in the amount of $418,750 on behalf of Plaintiff Widner. (Am. Compl. ¶¶ 74–75.)

15. Plaintiffs initiated this action on 23 October 2025 by filing a Complaint in Gaston County Superior Court (ECF No. 3). In the Complaint, Plaintiffs asserted claims for (1) breach of written contract, (2) breach of oral contract, (3) unjust enrichment/quantum meruit, (4) account stated, (5) unfair and deceptive trade practices ("UDTP"), (6) constructive fraud, (7) breach of fiduciary duty, (8) fraudulent misrepresentation/fraudulent inducement, and (9) civil conspiracy.

16. On 24 October 2025, this case was designated as a complex business case and assigned to the undersigned. (ECF Nos. 1–2).

17. Defendants filed a partial Motion to Dismiss on 30 January 2026. (ECF No. 10.)

18.    Plaintiffs filed a Motion to Amend on 27 March 2026.  The proposed Amended Complaint primarily seeks to add two new Defendants—DB Systems and Spectral—to this lawsuit and to include them in the claim for civil conspiracy.[5]

19.    The Motions came on for hearing on 27 May 2026 at which all parties were represented by counsel.

20.    The Motions have been fully briefed and are now ripe for resolution.

**LEGAL STANDARD**

21.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017).  The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987).  The Court accepts all well-pled factual allegations in the relevant pleading as true.  *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018).  The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

22.    Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the

---

[5] At the 27 May hearing on the Motions, Plaintiffs' counsel stated that Plaintiffs also seek to add DB Systems and Spectral as Defendants to the claim for unjust enrichment/quantum meruit. (Hrg. Tr. at 4.)

complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (cleaned up). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

23. Our Supreme Court has held "that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

### I. Motion to Amend

24. Rule 15 of the North Carolina Rules of Civil Procedure states in pertinent part as follows:

> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not yet been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

N.C. R. Civ. P. 15(a).

25.     Our Supreme Court has held that "[t]here is no more liberal canon in the [R]ules than that leave to amend shall be freely given when justice so requires." *Vaughan v. Mashburn*, 371 N.C. 428, 434 (2018) (cleaned up). "This liberal amendment process under Rule 15 complements the concept of notice pleading embodied in Rule 8 and reflects the legislature's intent that decisions be had on the merits and not avoided on the basis of mere technicalities." *Id.* (cleaned up).

26.     Nevertheless, "the [R]ules still provide some protection for parties who may be prejudiced by liberal amendment." *Henry ex rel. Estate of Henry v. Deen*, 310 N.C. 75, 82 (1984) (cleaned up). "Reasons justifying denial of an amendment include: (1) undue delay, (2) bad faith, (3) undue prejudice, (4) futility of amendment, and (5) repeated failure to cure defects by previous amendments." *Howard v. IOMAXIS, LLC*, 2021 NCBC LEXIS 116, at *17 (N.C. Super. Ct. Dec. 22, 2021) (cleaned up). "The burden is upon the opposing party to establish that [it] would be prejudiced by the amendment." *Vitaform, Inc. v. Aeroflow, Inc.*, 2021 NCBC LEXIS 79, at *11 (N.C. Super. Ct. Sept. 16, 2021) (cleaned up).

27.     Motions to amend are "addressed to the discretion of the trial court." *Vaughan*, 371 N.C. at 433 (cleaned up).

28.     In addition to adding DB Systems and Spectral as additional Defendants, the proposed Amended Complaint also contains new supporting allegations for several of Plaintiffs' claims for relief.

29.     The Court concludes that the Motion to Amend should not be denied on the ground of undue delay. It is undisputed that Plaintiffs filed their Motion to

Amend within the deadline for amendments to the pleadings set by the Case Management Order. Moreover, Defendants have failed to make a persuasive showing that the Motion to Amend should be denied on the basis of unfair prejudice or bad faith.

30. Defendants' only remaining ground for opposing the Motion to Amend is on the basis of futility. "The futility standard under Rule 15 is essentially the same standard used in reviewing a motion to dismiss under Rule 12(b)(6) but provides the Court liberal discretion to find that an amendment lacks futility." *Simply the Best Movers, LLC v. Marrins' Moving Sys., Ltd.*, 2016 NCBC LEXIS 28, at *5–6 (N.C. Super. Ct. Apr. 6, 2016) (cleaned up). "[A] motion to amend is not futile when the allegations of the [amendment], treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Howard v. IOMAXIS, LLC*, 2023 NCBC LEXIS 159, at *15 (N.C. Super. Ct. Nov. 29, 2023) (cleaned up). On the other hand, "[a] motion for leave to amend is futile and appropriately denied when the proposed amendment could not withstand a motion to dismiss for failure to state a claim." *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2016 NCBC LEXIS 77, at *6 (N.C. Super. Ct. Oct. 7, 2016) (cleaned up).

31. There is a substantial overlap between the arguments made by Defendants in their partial Motion to Dismiss as to Plaintiffs' original Complaint and the futility-related arguments made by them in their brief opposing the Motion to Amend.

32.     Given that the parties have had a full and fair opportunity to address all of these issues both in their briefing and at the 27 May hearing, the Court, in the exercise of its discretion and with the agreement of all parties, finds that considerations of judicial economy support the Court's consideration of both pending Motions together.  (Hrg. Tr. at 3–4.)  *See Gateway Mgmt. Servs. v. Carrbridge Berkshire Grp., Inc.*, 2018 NCBC LEXIS 45, at *8 (N.C. Super. Ct. May 9, 2018) ("Although an amended pleading would ordinarily moot a pending motion to dismiss, the Court will consider Defendants' Motions to Dismiss as to the Amended Complaint because Defendants and Plaintiff both addressed the sufficiency of the Amended Complaint in their respective briefs and at the hearing.").

33.     For the reasons set out below, Plaintiffs' Motion to Amend is **GRANTED** in part and **DENIED** in part.

## II.     Motion to Dismiss

34.     Defendants only seek dismissal of Plaintiffs' claims for breach of written contract (in part), breach of fiduciary duty, constructive fraud, fraudulent misrepresentation/fraudulent inducement, and civil conspiracy.  Therefore, the Court will limit its analysis to those claims.

### A.     Breach of Written Contract

35.     "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.  The elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." *Davis v. Woods*, 286 N.C. App. 547, 561 (2022) (cleaned up).

36.     The statute of limitations serves as the legal basis for Defendants' motion seeking dismissal of portions of Plaintiffs' breach of contract claims. The limitations period for a breach of contract claim in North Carolina is three years pursuant to N.C.G.S. § 1-52(1).

37.     "A statute of limitations defense may be properly asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." *He Chi v. N. Riverfront Marina & Hotel LLLP*, 2023 NCBC LEXIS 89, at *35 (N.C. Super Ct. July 27, 2023) (cleaned up).

38.     Under North Carolina law, "the statute of limitations . . . begins on the date of maturity of the loan[ ] unless the note holder . . . has exercised his or her right of acceleration." *Real Time Resols., Inc. v. Cole*, 293 N.C. App. 632, 636 (2024) (cleaned up).

39.     At the 27 May hearing, Plaintiffs' counsel acknowledged that (1) the transactions referenced in paragraph 89 of the Amended Complaint consisted of all of the written contracts that form the basis for their breach of contract claim; (2) all of the transactions identified in paragraph 89 (except for the transaction listed in subpart (v)) consisted of loans evidenced by promissory notes; and (3) the applicable maturity date for virtually all of these promissory notes is set out in paragraph 89. (Hrg. Tr. at 6.)[6]

---

[6] Counsel for Plaintiffs also acknowledged that none of these loans were secured by collateral and that, as a result, Plaintiffs are properly classified as unsecured creditors. (Hrg. Tr. at 7).

40.     Defendants argue that the statute of limitations bars Plaintiffs' breach of contract claim as to any of the promissory notes referenced in paragraphs 89(a)-(u) with a stated maturity date of more than three years from the initial filing of this lawsuit on 23 October 2025. The promissory notes falling into this category are those identified in paragraphs 89(a), (b), (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), (m), (n), (o) and (t).

41.     Plaintiffs concede that Defendants would be correct on this issue unless the applicable limitations period was waived or tolled. In that regard, Plaintiffs make two arguments. First, they contend that many of the promissory notes at issue contained language serving to waive the statute of limitations as a defense. Second, Plaintiffs argue that Defendants are prevented from asserting the statute of limitations as a defense based on the doctrine of equitable estoppel. The Court will address each of these arguments in turn.

42.     With regard to their waiver argument, Plaintiffs assert that two different contractual provisions were used in some of the promissory notes and that each provision (despite the differences in their wording) effectively served to waive Defendants' right to assert a timeliness defense. The first of these provisions is quoted in paragraph 65 of the Amended Complaint as follows:

> The promissory notes that Healthcare Fund and Gaston Capital executed in favor of ProNuvis (NC) and OrthoMedFlex, respectively, provide that, among other things, "[t]he right to plead any and all statutes of limitations as a defense to any demands hereunder is hereby waived to the fullest extent permitted by law."

(Am. Compl. ¶ 65.)

43. Defendants do not contest the fact that such language would be sufficient to waive a statute of limitations defense. (Hrg. Tr. at 47.) *See, e.g., Musarra v. Bock*, 200 N.C. App. 780, 784 (2009) ("An explicit waiver of the statute of limitations is effective under the laws of . . . North Carolina[.]"); *see also Franklin v. Franks*, 205 N.C. 96, 97–98 (1933) ("The general rule is that a party may either by agreement or conduct estop himself from pleading the statute of limitations as a defense to an obligation.") (cleaned up).

44. Of the promissory notes listed in paragraph 89, only the promissory notes identified in subparts (a) and (b) are alleged to (1) contain this waiver language; (2) concern loans made by either Healthcare Fund or Gaston Capital to ProNuvis (NC) or OrthoMedFlex; and (3) contain maturity dates earlier than 23 October 2022.[7] Defendants' Motion to Dismiss is therefore **DENIED** as to Plaintiffs' breach of contract claim with regard to these two promissory notes.

45. The second type of waiver provision Plaintiffs seek to rely on is quoted in paragraph 66 of the Amended Complaint, which states as follows:

> The promissory notes that WG Fund and Doctor executed in favor of OrthoMedFlex and Aurum, respectively . . . provide that "[u]pon default the holder of this Note may employ an attorney to enforce the holder's rights and remedies[.] . . . The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies to exercise any of them another time."

(Am. Compl. ¶ 66.)

---

[7] At the 27 May hearing, Plaintiffs' counsel acknowledged that the promissory notes referenced in paragraphs 89(a) and (b) were the only ones that contained this first waiver provision. (Hrg. Tr. at 31).

46.     But this language, conversely, is *not* sufficient to waive a statute of limitations defense. *See, e.g., Kiernan Family Draper, LLC v. Hidden Valley Health Ctrs.*, 2021 Utah LEXIS 113, at \*P32 (2021) ("[A]n antiwaiver provision may not circumvent the statute of limitations for contract claims. So although a party may not have waived a contractual right by [accepting late payments], the statute of limitations may still bar it from recovering for harm caused by a breach of that right."). Therefore, the inclusion of this second type of waiver provision in some of the promissory notes at issue does not serve as a bar to Defendants' statute of limitations defense to Plaintiffs' breach of contract claim as to those notes.

47.     Finally, with regard to Plaintiffs' equitable estoppel argument, Plaintiffs argue in response to the Motion to Dismiss that Defendants made representations intended to induce Plaintiffs to postpone filing suit on the overdue promissory notes.

48.     "Equitable estoppel may be invoked, in a proper case, to bar a defendant from relying upon the statute of limitations." *Duke Univ. v. Stainback*, 320 N.C. 337, 341 (1987). The doctrine is rooted in notions of "fair play." *Id.* (cleaned up); *see also Jordan v. Crew*, 125 N.C. App. 712, 720 (1997) ("In order for equitable estoppel to bar application of the statute of limitations, a plaintiff must have been induced to delay filing of the action by the misrepresentations of the defendant.").

49.     Equitable estoppel has three essential elements: "(1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by

the other party; and (3) knowledge, actual or constructive, of the real facts." *Friedland v. Gales*, 131 N.C. App. 802, 807 (1998) (cleaned up). In addition, the party claiming estoppel "must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." *Id.* (cleaned up). "[T]he conduct of both parties must be weighed in the balances of equity and the party claiming the estoppel no less than the party sought to be estopped must conform to fixed standards of equity." *Gaston–Lincoln Transit, Inc. v. Md. Cas. Co.*, 285 N.C. 541, 549 (1974).

50. Critically, however, under North Carolina law the "[f]acts supporting equitable estoppel must be pled with particularity and demonstrate that Defendants' representations delayed Plaintiffs from filing suit." *He Chi,* 2023 NCBC LEXIS 89, *57.

51. Here, the Amended Complaint never expressly alleges that Kellar (or any other representative of Defendants) made specific statements or representations seeking to delay Plaintiffs from initiating litigation. Instead, Plaintiffs have merely made conclusory statements such as the following:

> Kellar represented that Plaintiffs' capital contributions could be repaid, at least in part, through future capitalization of the Dynamic Balancer and/or the Flush Anchor, thereby suggesting that the Kellar Entities would own the intellectual property rights to the devices.
>  . . .
>
> Kellar never intended to repay Plaintiffs' capital contributions.
> . . .
>
> Kellar concealed from Plaintiffs the transfers and/or assignments of the intellectual property rights in the Dynamic Balancer and the Flush Anchor.

(Amd. Compl. ¶¶ 80, 82, 86.)

52.     These assertions are simply insufficient to plead equitable estoppel.

53.     Therefore, the Court concludes that the portion of Plaintiffs' breach of contract claims based on the promissory notes identified in subparts (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), (m), (n), (o), and (t) of paragraph 89 are time-barred and are therefore **DISMISSED** with prejudice.

### B.     Fraudulent Misrepresentation/Fraudulent Inducement

54.     Plaintiffs assert fraud-based claims on theories of both fraudulent misrepresentation and fraudulent concealment.  The Court will discuss each in turn.

### (1)   Fraudulent Misrepresentation

55.     To prevail on a claim for fraudulent misrepresentation, a plaintiff must show:  "(1) [a] [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519, 526–27 (2007).  Additionally, the tort of fraudulent misrepresentation requires a showing of actual damages. *Id.*; *see also Speller v. Speller*, 273 N.C. 340, 343 (1968) ("In order to establish fraud, there must be a showing of actual loss, injury or damage."); *Hawkins v. Hawkins*, 101 N.C. App. 529, 532 (1991) (requiring actual damages for fraudulent misrepresentation).

56.     In North Carolina, a fraudulent misrepresentation claim is a species of fraud and must be pled with particularity. N.C.R. Civ. P. 9(b).  A claimant must allege the "time, place, and content of the fraudulent representation, identity of the person

making the representation, and what was obtained as a result of the fraudulent acts or representations." *S.N.R. Mgmt. Corp., v. Danube Partners 141, LLC*, 189 N.C. App. 601, 610 (2008) (cleaned up).

57. Here, Plaintiffs' allegations fail to meet this standard of particularity. The Amended Complaint alleges a business relationship between the parties from at least 2013 through 2023 yet fails to provide any specific dates on which the misrepresentations were made. Nor does the Amended Complaint state with specificity the precise misrepresentations that existed or to whom they were made.

58. Indeed, the Amended Complaint does not even expressly allege that there was ever a specific representation made that the intellectual property rights to the Devices would never be transferred to other entities.

59. For all of these reasons, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' fraudulent misrepresentation theory, and this claim is **DISMISSED** with prejudice.

### (2) Fraudulent Concealment

60. A claim for fraudulent concealment must show "(1) . . . concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS 13, at \*19–20 (N.C. Super. Ct. Feb. 9, 2018) (cleaned up).

61.   In addition, the claimant must also allege that the party who failed to disclose material facts owed the claimant a duty to disclose. *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696 (2009) (cleaned up).

62.   Although fraudulent concealment is by its very nature difficult to plead with particularity, this Court has previously held that a fraudulent concealment claim must comply with Rule 9(b) by specifically pleading:

> (1) the relationship between plaintiff and defendant giving rise to the duty to speak; (2) the event that triggered the duty to speak or the general time period over which the relationship arose and the fraud occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant gained from withholding the information; (6) why the plaintiff's reliance on the omission was reasonable and detrimental; and (7) the damages the fraud caused the plaintiff.

*Tillery Envtl. LLC,* 2018 NCBC LEXIS 13, at *21–22.

63.   In essence, Plaintiffs' fraudulent concealment theory in this case is that (1) Defendants solicited money from Plaintiffs to advance development of the two Devices; (2) Plaintiffs were led to believe that the ultimate sale of the Devices would serve as the basis for Plaintiffs to be repaid; (3) Defendants concealed the fact that the companies who were the recipients of Plaintiffs' loans would not be the owners of (or would not remain the owners of) the intellectual property rights for the Devices, and (4) as a result of this concealment, other entities controlled by Kellar (namely Little Engine, DB Systems, and Spectral) are now able to reap financial benefits flowing from these Devices without any corresponding duty to satisfy Defendants' obligations to Plaintiffs pursuant to the loans.

64.     Although Plaintiffs will be required to support this claim with far more specificity in order to survive summary judgment, construing their allegations in the light most favorable to them as required by Rule 12(b)(6), they have arguably pled a valid claim for relief on this theory.  Moreover, in their briefing, Defendants focus on Plaintiffs' affirmative misrepresentation theory and barely reference Plaintiffs' allegations of fraudulent concealment.

65.     Accordingly, the Motion to Dismiss is **DENIED** as to Plaintiffs' fraudulent concealment claim.

### C.     Breach of Fiduciary Duty

66.     It is well-settled that "[t]o establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of the injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019) (cleaned up).  Thus, in order "to make out a claim for breach of a fiduciary duty, plaintiff[] must first allege facts that, taken as true, demonstrate that a fiduciary relationship existed between the parties." *Id.* at 339–40.

67.     A fiduciary relationship is generally found to exist when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (cleaned up).  "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances

constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019) (cleaned up).

68. North Carolina courts have long held that no fiduciary relationship exists when the parties are in a debtor-creditor relationship. *See, e.g.*, *Sec. Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co.* 265 N.C. 86 (1965) ("There was no fiduciary relationship: the relation was that of debtor and creditor."); *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992) ("[T]he mere existence of a debtor-creditor relationship between the parties does not create a fiduciary relationship."); *McNew v. Fletcher Hosp., Inc.*, 2022 NCBC LEXIS 109, at *17 (N.C. Super. Ct. Sept. 20, 2022) ("The billing relationship is instead one of debtor and creditor, which our courts have made clear is not a *de jure* fiduciary relationship.").

69. Furthermore, the Amended Complaint does not contain any allegations suggesting that the dealings between the parties were similar to those in other cases in which our courts have found the existence of a fiduciary relationship. "The standard for finding a *de facto* fiduciary relationship is a demanding one: [o]nly when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstances of a fiduciary relationship has arisen." *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 636–37 (2016) (cleaned up).

70. Accordingly, because the Court finds that no fiduciary relationship existed between Plaintiffs and Defendants, Defendants' Motion to Dismiss Plaintiffs'

breach of fiduciary duty claim is **GRANTED**, and this claim is **DISMISSED** with prejudice.

### D. Constructive Fraud

71. Our Supreme Court has recognized that the elements of a constructive fraud claim largely overlap with the elements of a claim for breach of fiduciary duty. *See Chisum v. Campagna*, 376 N.C. 680, 706–07 (2021). "[A] cause of action for constructive fraud [requires] (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *White v. Consol. Planning Inc.*, 166 N.C. App. 283, 294 (2004) (cleaned up). "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself." *Id.*

72. Here, for the same reasons set out above, Plaintiffs have failed to adequately plead the existence of a fiduciary relationship between the parties. Therefore, Defendants' Motion to Dismiss is **GRANTED**, and Plaintiffs' constructive fraud claim is **DISMISSED** with prejudice.

### E. Civil Conspiracy

73. Finally, Defendants seek the dismissal of Plaintiffs' claim for civil conspiracy.

74. In order to state a claim for conspiracy, a plaintiff must allege "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of

the co-conspirators; and (4) pursuant to a common scheme." *Piraino Bros. LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350 (2011) (cleaned up).

75.   It is well established that

> [t]here is no independent cause of action for civil conspiracy.  Only where there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from that agreement.

*Toomer v. Garrett*, 155 N.C. App. 462, 483 (2002) (cleaned up).

76.   Here, Plaintiffs are essentially alleging that Defendants Kellar, Little Engine, Crowder, DB Systems, and Spectral entered into a conspiracy to facilitate the transfer of the intellectual property for the Devices away from the entities that had a contractual relationship with Plaintiffs and into separate companies.

77.   At the 27 May hearing, Plaintiffs' counsel represented that at least one of the predicate claims for the civil conspiracy cause of action is Plaintiffs' UDTP claim—one as to which Defendants have not sought dismissal. *Am. Air Filter Co. v. Price*, 2017 NCBC LEXIS 55, at \*68 (N.C. Super. Ct. June 26, 2017) (finding that a UDTP claim which survives dismissal can serve as the requisite underlying tort for a civil conspiracy claim).[8]

78.   Therefore, Defendants' Motion to Dismiss the civil conspiracy claim is **DENIED**.  Furthermore, the portion of Plaintiffs' Motion to Amend seeking the addition of DB Systems and Spectral as new Defendants is **GRANTED**.

---

[8] Moreover, Plaintiffs' fraudulent concealment claim also potentially serves as a predicate claim for a UDTP claim.

## CONCLUSION

**THEREFORE**, it is **ORDERED** as follows:

1. Defendants' Motion to Dismiss is **GRANTED** with prejudice as to the portion of Plaintiffs' claim for breach of written contract based on the promissory notes identified in subparts (c), (d), (e), (f), (g), (h), (i), (j), (k), (l), (m), (n), (o), and (t) of paragraph 89 of the Amended Complaint.

2. Defendants' Motion to Dismiss is **GRANTED** with prejudice as to Plaintiffs' fraudulent misrepresentation claim, breach of fiduciary duty claim, and constructive fraud claim.

3. Defendants' Motion to Dismiss is otherwise **DENIED**.

4. Plaintiffs' Motion to Amend is **GRANTED**, and Plaintiffs shall file an Amended Complaint by 5 August 2026. However, because the Court has now dismissed Plaintiffs' claims for breach of fiduciary duty and constructive fraud in their entirety along with their theory of fraud premised on fraudulent misrepresentation, the Amended Complaint shall not include those claims for relief.

**SO ORDERED**, this the 30th day of July 2026.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases